1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **KELLY GRACE ANCHETA,** | Case No.: 16-CV-6520 YGR |
| **Plaintiff,** | **ORDER DIRECTING SUPPLEMENTAL BRIEFING ON MOTION TO DISMISS (DKT. NO. 11)** |
| v. | |
| **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.** *et al.*, | |
| **Defendants.** | |

Pending before the Court is defendants' Motion to Dismiss the Complaint (Dkt. No. 11).  In the briefing on that motion, the parties address arguments concerning plaintiff's standing to bring a wrongful foreclosure claim based upon allegations that defects in the assignments of interest made the assignments void *ab initio* and the foreclosure improper, relying on the California Supreme Court's decision in *Yvanova v. New Century Mortgage Corp.,* 62 Cal. 4th 919 (2016).

While the instant motion was pending, the California Court of Appeal issued a decision in *Mendoza v. JPMorgan Chase Bank, N.A., et al.*, C071882, (December 13, 2016) (attached hereto as Exhibit 1) on this issue.

The Court **DIRECTS** the parties to file supplemental briefing of no more than five (5) pages addressing the effect of the *Mendoza* decision on the pending motion by no later than **January 3, 2017**.

The hearing on the motion, currently set for December 20, 2016, is **VACATED**.  Should the Court require any oral argument, it will set a date for argument by further notice after receipt of the supplemental briefing.

**IT IS SO ORDERED**.

Dated:  December 15, 2016

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

# EXHIBIT 1

Filed 12/13/16; on remand

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| MARIA MENDOZA, | C071882 |
| Plaintiff and Appellant, | (Super. Ct. No. 39201100267960CUORSTK) |
| v. | OPINION ON REMAND |
| JPMORGAN CHASE BANK, N.A. et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of San Joaquin County, Michael D. Coughlan, Judge.  Affirmed.

Yesk Law, Michael Yesk, Megan Dailey; United Law Center and Danny A. Barak for Plaintiff and Appellant.

Bryan Cave, Daniel T. Rockey, Robert J. Esposito and Joseph J. Poppen for Defendants and Respondents.

The California Supreme Court's narrow ruling on a borrower's standing to challenge the validity of the chain of assignments involved in the securitization of her loans in *Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919 (*Yvanova*) clarifies what is the dispositive issue in this appeal, but expressly did not decide how to

resolve it.[1]  (*Id*. at p. 931.)  The court held a borrower has standing to allege that an assignment of the promissory note and deed of trust to the foreclosing party is void, not voidable; yet it did not decide whether a post-closing date transfer into a New York securitized trust is void or voidable.  (*Id*. at p. 935.)  New York law, as interpreted by an overwhelming majority of New York, California, and federal courts, however, provides that defects in the securitization of loans can be ratified by the beneficiaries of the trusts established to hold the mortgage-backed securities and, as a result, the assignments are voidable.  Following this ever-expanding body of law, we conclude plaintiff Maria Mendoza, the borrower, does not have standing to challenge the alleged irregularities in the securitization of her loan.  We therefore affirm the trial court's dismissal of the second amended complaint for wrongful foreclosure, declaratory relief, and quiet title.

## FACTUAL ALLEGATIONS

The second amended complaint, from which we extract the facts for purposes of this appeal, alleges irregularities in the assignment of the Mendoza deed of trust and defects in the process by which the Mendoza loan was securitized.  As alleged, these defects left the foreclosing entities without title to the property and without authority to foreclose.  We first summarize plaintiff's description of the loan and foreclosure processes and then consider plaintiff's accounting of the flaws in those processes that entitle her to the relief sought.

**The Loan, Assignment of Deed of Trust, and Substitution of Trustee**

In November 2007 Maria and Juan Mendoza borrowed $540,600 from defendant JPMorgan Chase Bank, N.A. (Chase), secured by a deed of trust.  The deed of trust identifies the Mendozas as the "Borrowers," Chase as the "Lender," Chase as

---

[1] The California Supreme Court vacated our original opinion in this matter, and ordered us to reconsider the cause in light of *Yvanova*.

"Beneficiary," and North American Title Company as the "Trustee."[2]  By March of 2011, the borrowers were $54,030 in arrears.

On March 4, 2011, Chase assigned "all beneficial interest" in the Mendoza deed of trust to Chase Home Finance LLC; Chase Home Finance LLC, as the "present Beneficiary under [the Mendozas'] Deed of Trust," substituted California Reconveyance Company for North American Title Company as the trustee; and California Reconveyance Company, as trustee, issued a "Notice of Default and Election to Sell Under Deed of Trust."  It is this assignment of the deed of trust and the substitution of the trustee that plaintiff challenges.

Colleen Irby signed the assignment as an officer of Chase, but according to plaintiff, Irby's profile page on LinkedIn.com identifies her as an employee of California Reconveyance Company.  Plaintiff alleges on information and belief, therefore, that Irby fraudulently executed the assignment and Irby was nothing more than what has come to be known as a "robo-signer"—"an individual who simply signs thousands of property record documents without any legal or corporate authority whatsoever."  The notary, Carla Dodd, who notarized Irby's signature was also, according to plaintiff, a "part of this scheme by the bank defendants."  Plaintiff alleges that the substitution of the trustee was similarly fraudulent.  The three documents were recorded on March 7, 2011.

On June 8, 2011, California Reconveyance Company gave "Notice of Trustee's Sale" to occur on June 29, 2011.  On July 5, 2011, California Reconveyance Company recorded a "Trustee's Deed Upon Sale."  The Trustee's Deed Upon Sale recites that the grantee, Chase Home Finance LLC, was the highest bidder at a public auction held on June 29, 2011, and purchased the property for $262,144.  California Reconveyance Company, as trustee, conveyed title to plaintiff's home to Chase, "successor by merger to

---

[2]  Juan Mendoza filed a timely notice of appeal, but that appeal was dismissed on May 9, 2013, for failure to file an opening brief.  (Cal. Rules of Court, rule 8.220(a)(1).)

Chase Home Finance LLC." Plaintiff alleges that because the assignment of the deed of trust and the substitution of California Reconveyance Company as the trustee were robo-signed and California Reconveyance Company commenced the nonjudicial foreclosure and held the trustee sale, the Trustee's Deed Upon Sale is void.

After two unsuccessful attempts to state viable causes of action against defendants, in April 2012 plaintiff filed a second amended complaint for wrongful foreclosure, quiet title, and declaratory relief against Chase; Chase Mortgage Finance Corporation; Chase Home Finance, LLC; California Reconveyance Company; The Bank of New York Trust Company, N.A. [(BONY)], Trustee for the Multi-Class Mortgage Pass-Through Certificates Series 2007-A3 and/or Series 2007-S6; North American Title Company; Colleen Irby; and Carla Dodd. In June the trial court sustained defendants' demurrer without leave to amend and entered judgment in favor of defendants on July 10, 2012.

The general allegations in the second amended complaint contain a long dissertation on the evils of Wall Street's greed and the securitization of predatory loans. Plaintiff's description of foreclosure abuse generally, as extracted from the popular media, is fully developed, but her allegations of the specific flaws in the securitization of her specific loan are quite sparse. An essential step in the process of securitizing a loan is the transfer of the promissory note and deed of trust into a trust. Plaintiff identifies two trusts, "Trust 2007-A3" and "Trust 2007-S6," which are real estate mortgage investment conduit (REMIC) trusts; their terms are set forth in pooling and service agreements (PSA's) for the trusts, which are governed under New York law. The PSA's are not part of the record on appeal. Plaintiff directs us to the Internet to examine the PSA's allegedly filed with the Securities and Exchange Commission establishing rules for such transfers. She alleges that the PSA's establish cutoff dates (November 29, 2006, and November 28, 2007) by which loan closings must take place to be included in either trust.

Plaintiff alleges that because her loan was executed well before the closing dates, it was eligible for inclusion in the trusts and defendant banks "intended to transform, sell,

convey or otherwise transfer title, for consideration, the Note and [Deed of Trust] from debt instruments into Defendant Trusts 2007-A3, A6 or Doe 1 as securities or stocks through the 'Securitization' process."  According to plaintiff, however, the " 'true sales' " never took place because defendant banks failed to follow "the basic legal requirements for the transfer of non-negotiable instruments and thereby, the legal, equitable, and pecuniary interest in Plaintiffs' Note and [Deed of Trust]."  As a consequence, plaintiff asserts that Chase and Chase Home Finance LLC, "which purport to be Plaintiffs' creditors and/or purported owners of the Plaintiffs' Home, actually have no right, title, or interest in Plaintiffs' Note and [Deed of Trust], and have no right to collect mortgage payments, demand mortgage payments, report derogatorily against Plaintiffs' credit, or foreclose on Plaintiffs' Home."

Plaintiff admits she is in default.  Yet she alleges:  "[T]he bank defendants are attempting to take advantage of the complex structured finance system to defraud yet another homeowner.  Having already benefitted from an American taxpayer bailout of unprecedented proportions, Plaintiffs are informed and believe, and thereon allege, that the bank defendants will oppose this [Second Amended Complaint] and seek a Court - sanctioned bailout by attempting to validate the blatantly fabricated 'Assignment' of the [Deed of Trust] and Substitution . . . and as a consequence thereby the Trustee's Deed upon Sale . . . , thereby committing fraud on the Court, and misleading the Plaintiffs into believing that the bank defendants were their actual creditors and were entitled to foreclose on their home."  Plaintiff asserts:  "Simply put, the Court should not allow the bank defendants to trample over 200 years of well-settled property laws just because Plaintiffs at one time 'owed somebody the money'."

Because plaintiff's note and deed of trust were not properly transferred into the trusts before the applicable closing dates, plaintiff alleges that neither the note nor the deed of trust was part of Trust 2007-A3, Trust 2007-S6, or Doe 1.  The second amended complaint concludes:  "The failure to deposit the Note into the Trust 2007-A3,

Trust 2007-S6, or Doe 1 before the closing date is a violation of the PSAs and of New York trust law.  Consequently, Trust 2007-A3, Trust 2007-S6 or Doe 1 cannot claim any legal or equitable right, title, or interest in Plaintiffs' Note and [Deed of Trust] since BONY or Doe 2 cannot take any action which is not authorized by the Securitization agreements that created and govern Trust 2007-A3, Trust 2007-S6 or Doe 1."

In short, plaintiff alleges that the securitization of her loan failed.  Plaintiff asserts the bank acted with malice by recording an assignment of an interest it knew it did not possess, fully aware that the ensuing notice of default and all that followed were void.

In her complaint, plaintiff describes a litany of bad bank practices and summarizes a number of "Relatively Recent Developments," including actions taken by the California Attorney General, the Office of the Comptroller of the Currency, and various insurance companies against Chase.

Plaintiff alleges she "[has] suffered, and continue[s] to suffer significant monetary, legal and equitable damage" as a result of the banks' pattern of conduct.  Specifically, she asserts she and her husband have been damaged in the following ways:  "(1) they have been paying the wrong party for an undetermined amount of time and overpaid interest and other penalties that were miscalculated; (2) they have suffered damage to their credit reports and scores; (3) the title to Plaintiffs' Home has been lost through a wrongful foreclosure; (4) Plaintiffs are facing imminent eviction from their home; (5) Plaintiffs have expended significant funds to cover the cost of attorneys' fees and related costs; (6) Plaintiffs have suffered damage to their reputation in the community; (7) Plaintiffs are unable to determine whether they sent their monthly mortgage payments to the right party; (8) multiple parties may seek to enforce their debt obligation against Plaintiffs; and (9) any would-be buyer of Plaintiffs' home will find themselves in legal limbo, unable to know with any certainty whether they can safely buy Plaintiffs' home or get title insurance."

Plaintiff appeals the dismissal of her action following the trial court's ruling sustaining defendants' demurrer without leave to amend.

## DISCUSSION

### I

### *Standard of Review*

The purpose of a demurrer is to test the sufficiency of the pleadings to state a cause of action as a matter of law. (*Kan v. Guild Mortgage Co.* (2014) 230 Cal.App.4th 736, 740.) We must assume the truth of all properly pleaded facts as well as those that are judicially noticeable. (*Yhudai v. IMPAC Funding Corp.* (2016) 1 Cal.App.5th 1252, 1255 (*Yhudai*); *Sciarratta v. U.S. Bank National Assn.* (2016) 247 Cal.App.4th 552, 561.) We are not concerned with plaintiff's ability to prove the allegations or with any possible difficulties in making such proof. Our review is de novo. (*Aguilera v. Heiman* (2009) 174 Cal.App.4th 590, 595.)

Where, as here, the trial court sustains the demurrer without leave to amend, we must decide whether there is a reasonable possibility the plaintiff can cure the defect with an amendment. (*Saterbak v. JPMorgan Chase Bank*, N.A. (2016) 245 Cal.App.4th 808, 813 (*Saterbak*).) If we find that an amendment could cure the defect, we must find the court abused its discretion and reverse. If not, the court has not abused its discretion. Plaintiff bears the burden of proving an amendment would cure the defect. (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.)

### II

### *Standing to Challenge a Wrongful Foreclosure*

Over the course of several iterations, plaintiff has pared down her complaint to three alleged causes of action—wrongful foreclosure, quiet title, and declaratory relief. We begin with her claim of wrongful foreclosure, based on the premise that the foreclosure sale was void because the botched attempt to securitize her loan poisoned the

subsequent foreclosure, and/or because the assignment of the deed of trust and the substitution of trustee were fraudulently executed by a robo-signer.[3]

Standing is a threshold issue necessary to maintain a cause of action, and the burden to allege and establish standing lies with the plaintiff.  (*Saterbak, supra*, 245 Cal.App.4th at pp. 813-814; *Rajamin v. Deutsche Bank National Trust Co.* (2d Cir. 2014) 757 F.3d 79 (*Rajamin*).)  Plaintiff, therefore, bore the burden to allege facts which established that she had standing to challenge Chase's assignment of its beneficial interest to Chase Home Finance LLC and the latter's substitution of California Reconveyance Company for North American Title Company.  To demonstrate the requisite standing, she was required to allege facts showing she had a " 'beneficial interest [in the assignment and substitution] that is concrete and actual, and not conjectural or hypothetical.' [Citation.]"  (*Saterbak,* at p. 814.)

Plaintiff maintains that her allegation that the assignment is void is sufficient to survive a demurrer, particularly in light of the Supreme Court's holding in *Yvanova.*  Not so.  We are required to assume the truth of plaintiff's *factual allegations*, not her *legal conclusions.* (*Yhudai, supra*, 1 Cal.App.5th at p. 1257.)  An examination of her legal conclusion that the assignment is void, and therefore she has standing to challenge it, must begin with what our Supreme Court did and did not say in *Yvanova.*

By the Supreme Court's own characterization, its holding in *Yvanova* is a narrow one.  "Our ruling in this case is a narrow one.  We hold only that a borrower who has suffered a nonjudicial foreclosure does not lack standing to sue for wrongful foreclosure based on an allegedly void assignment merely because he or she was in default on the

---

[3]  The second amended complaint does not allege the foreclosure is void because defendants failed to comply with the notice and contact requirements set forth in Civil Code section 2923.5, yet on appeal plaintiff argues that defendants' failure to comply with section 2923.5 voids the sale.  We agree with defendants that the issue cannot be raised for the first time on appeal.

loan and was not a party to the challenged assignment.  We do not hold or suggest that a borrower may attempt to preempt a threatened nonjudicial foreclosure by a suit questioning the foreclosing party's right to proceed.  Nor do we hold or suggest that plaintiff in this case has alleged facts showing the assignment is void or that, to the extent she has, she will be able to prove those facts.  Nor, finally, in rejecting defendant's arguments on standing do we address any of the substantive elements of the wrongful foreclosure tort or the factual showing necessary to meet those elements." (*Yvanova, supra*, 62 Cal.4th at p. 924.)  The court considered and resolved a single issue:  "[U]nder what circumstances, if any, may the borrower challenge a nonjudicial foreclosure on the ground that the foreclosing party is not a valid assignee of the original lender?  Put another way, does the borrower have standing to challenge the validity of an assignment to which he was or she was not a party?" (*Yvanova,* at p. 928.)  The court offered a simple answer.  A borrower has standing if the alleged assignment is void, but not if the assignment is merely voidable.  (*Id.* at p. 923.)

The court explained that "only the entity holding the beneficial interest under the deed of trust—the original lender, its assignee, or an agent of one of these—may instruct the trustee to commence and complete a nonjudicial foreclosure.  [Citations.]  If a purported assignment necessary to the chain by which the foreclosing entity claims that power is absolutely void, meaning of no legal force or effect whatsoever [citations], the foreclosing entity has acted without legal authority by pursuing a trustee's sale, and such an unauthorized sale constitutes a wrongful foreclosure." (*Yvanova, supra*, 62 Cal.4th at p. 935.)  Because the assignment is without any effect, it can never be ratified or validated by the parties to it.

By contrast, a voidable contract or assignment is one that the parties to it may ratify and thereby give it legal force and effect or extinguish at their election.  (*Yvanova, supra*, 62 Cal.4th at pp. 929-930.)  Only the parties to the agreement have the power to ratify or extinguish; consequently, allowing a borrower to challenge an assignment based

on a defect that only renders it voidable would allow the borrower to exercise rights belonging exclusively to the parties to the assignment.  "A borrower who challenges a foreclosure on the ground that an assignment to the foreclosing party bore defects rendering it voidable could thus be said to assert an interest belonging solely to the parties to the assignment rather than to herself."  (*Id*. at p. 936.)

*Yvanova* did not consider the question we must determine here and that is whether either the assignment of plaintiff's deed of trust to the investment trust after the trust's closing date or the alleged robo-signing of the documents rendered the assignment void, and not merely voidable.  That is a legal question, which has been addressed by a number of New York, California, and federal courts.  Plaintiff asks us to eschew the growing number of cases both in and out of New York finding similar allegations constitute voidable assignments that can be ratified by the parties to the securitization agreements.

We begin with *Glaski v. Bank of America* (2013) 218 Cal.App.4th 1079, 1094-1095 (*Glaski*).  Relying on New York Estates, Powers and Trusts Law section 7-2.4 (Section 7-2.4) and an unpublished New York trial court decision—*Wells Fargo Bank, N.A. v. Erobobo* (Sup.Ct. 2013) 39 Misc.3d 1220(A) [972 N.Y.S.2d 147] (*Erobobo I*)— *Glaski* concluded that allegations that an assignment occurred after the closing date provided in a PSA were sufficient to support an allegation the assignment was void and to defeat a demurrer attacking a borrower's standing.  (*Glaski,* at p. 1097.)  The court stated that "applying the statute to void the attempted transfer is justified because it protects the beneficiaries . . . from the potential adverse tax consequence of the trust losing its status as a REMIC trust under the Internal Revenue Code."  (*Ibid*.)[4]  An avalanche of criticism of *Glaski's* interpretation of New York law followed.

---

[4]  This holding in Glaski was not before the California Supreme Court in *Yvanova*. (*Yvanova, supra*, 62 Cal.4th at p. 931.)

To be fair, the court in *Glaski* applied a literal interpretation of the language of the New York statute. Section 7-2.4 provides: "If the trust is expressed in an instrument creating the estate of the trustee, every sale, conveyance or other act of the trustee in contravention of the trust, except as authorized by this article and by any other provision of law, is void." In applying this statute, the court relied on a New York trial court's conclusion that " 'the acceptance of the note and mortgage by the trustee after the date the trust closed, would be void.' [Citations.]" (*Glaski, supra*, 218 Cal.App.4th at p. 1097, quoting *Erobobo I, supra,* 972 N.Y.S.2d 147.)

After *Glaski* was decided, a New York appellate court reversed *Erobobo I* and the Second Circuit squarely held that a post-closing transfer is not void, but only voidable. (*Wells Fargo Bank, N.A. v. Erobobo* (App.Div. 2015) 127 A.D.3d 1176, 1178 [9 N.Y.S.2d 312] (*Erobobo II*); *Rajamin, supra*, 757 F.3d 79, 90.) Defendants urge us to defer to the New York courts on questions of New York state law. We agree. "Thus, because New York Law governs the formation of the Trust, the Court turns to New York Law to determine whether a late assignment is void or merely voidable." (*Meixner v. Wells Fargo Bank, N.A.* (E.D.Cal. June, 13, 2016, No. 2:14-cv-02143-TLN-CKD) 2016 U.S.Dist. Lexis 77440.)

*Rajamin* is unequivocal in its rejection of the *Glaski* rationale. The Second Circuit explained at some length why a literal interpretation of Section 7-2.4 was misguided. The plaintiffs in *Rajamin* argued that the PSA's were contravened when the trustee accepted conveyances that did not conform to the procedural formalities the PSA's specified and, therefore, the conveyances were void under the statute. The Second Circuit disagreed.

"First . . . this argument depends on plaintiffs' contention that parties to the assignment agreements violated the terms of the PSAs. If those agreements were not breached, there is no foundation for plaintiffs' contention that any act by the trusts'

trustee was unauthorized.  But . . . plaintiffs, as nonparties to those contracts, lack standing to assert any nonperformance of those contracts.

"Second, under New York law, only the intended beneficiary of a private trust may enforce the terms of the trust.  [Citations.]  Where the challengers to a trustee's actions are not beneficiaries, and hence lack standing, the court 'need not decide whether the conduct of the trustee comported with the terms of the trust.' [Citation.]

"Third, even if plaintiffs had standing to make an argument based on EPTL § 7-2.4, on the theory that a mortgagor has standing to 'challenge[] a mortgage as invalid, ineffective, or void,' [citation], the weight of New York authority is contrary to plaintiffs' contention that any failure to comply with the terms of the PSAs rendered defendants' acquisition of plaintiffs' loans and mortgages void as a matter of trust law.  Under New York law, unauthorized acts by trustees are generally subject to ratification by the trust beneficiaries. . . .

"The principle that a trustee's unauthorized acts may be ratified by the beneficiaries is harmonious with the overall principle that only trust beneficiaries have standing to claim a breach of trust.  If a stranger to the trust also had such standing, the stranger would have the power to interfere with the beneficiaries right of ratification." (*Rajamin, supra*, 757 F.3d at pp. 87-89.)

New York state and federal courts continue to uphold the same rationale; that is, a borrower does not have standing to challenge an assignment that allegedly breaches a term or terms of a PSA because the beneficiaries, not the borrower, have the right to ratify the trustee's unauthorized acts.  As a consequence, an assignment after the publicized closing date is voidable, not void, under New York law.  (See, e.g. *Berezovskaya v. Deutsche Bank National Trust Co.* (E.D.N.Y. Aug. 1, 2014, No. 12 cv 6055 (KAM)) 2014 U.S.Dist. Lexis 127532; *Erobobo II, supra*, 9 N.Y.S.2d 312; *U.S. Bank N.A. v. Carnivale* (App.Div. 2016) 138 A.D.3d 1220 [29 N.Y.S.3d 643]; *Bank of America, N.A. v. Patino* (App.Div. 2015) 128 A.D.3d 994 [9 N.Y.S.3d 656].)

Other circuits, including the Ninth Circuit, have followed *Rajamin's* lead.  In *Morgan v. Aurora Loan Services, LLC* (9th Cir. 2016) 646 Fed.Appx. 546, the Ninth Circuit acknowledged that post-*Yvanova* a California borrower has standing to challenge a void assignment, but explained "because an act in violation of a trust agreement is voidable—not void—under New York law, which governs the Pooling and Service Agreement (PSA) at issue, Morgan lacks standing here." (*Id.* at p. 550; accord, *Zeppeiro v. GMAC Mortgage, LLC* (9th Cir. Oct. 5, 2016, No. 13-55420) 2016 U.S.App. Lexis 18083.)  The same standing rule applies in Texas under Texas law.  (*Ferguson v. Bank of NY Mellon Corp.* (5th Cir. 2015) 802 F.3d 777.)  But the Fifth Circuit also recognized that under New York law, an allegedly defective assignment in violation of a PSA is voidable.  The court wrote:  "Assuming the Fergusons had standing to challenge violations of a PSA, New York courts have not applied Section 7-2.4 in the manner the Fergusons would hope but instead have treated a trustee's act in violation of the trust as voidable but not void." (*Id.* at pp. 782-783.)  Thus, even under New York law, any alleged violation of the PSA would render Mortgage Electronic Registration Systems, Inc.'s (MERS) assignment of the deed of trust to Bank of New York at most voidable but not void.  It therefore made no difference if Texas or New York law applied because, under either state law, the plaintiffs lacked standing to assert that the MERS's assignment was void.  (*Ibid.*)  The Seventh and Eighth Circuits are in accord.  (*Jepson v. Bank of New York Mellon* (7th Cir. 2016) 816 F.3d 942, 946; *Cocroft v. HSBC Bank USA, N.A.* (7th Cir. 2015) 796 F.3d 680, 689 ["In interpreting this statute, however, New York courts appear to have almost uniformly concluded that a beneficiary retains the authority to ratify a trustee's *ultra vires* act, such as a late transfer"]; *Rogers v. Bank of America, N.A.* (8th Cir. 2015) 787 F.3d 937.)

Nor has *Glaski* been well received by the federal courts.  "Every court in [the Northern] district that has evaluated *Glaski* has found it unpersuasive and not binding authority.  See *Subramani v. Wells Fargo Bank N.A., No. C 13-1605, 2013 U.S. Dist.*

*LEXIS 156556, 2013 WL 5913789, at \*3 (N.D. Cal. Oct. 31, 2013)* (Judge Samuel Conti); *Dahnken v. Wells Fargo Bank, N.A., No. C 13-2838, 2013 U.S. Dist. LEXIS 160686, 2013 WL 5979356, at \*2 (N.D. Cal. Nov. 8, 2013)* (Judge Phyllis J. Hamilton); *Maxwell v. Deutsche Bank Nat'l Trust Co., No. C 13-3957, 2013 U.S. Dist. LEXIS 164707, 2013 WL 6072109, at \*2 (N.D. Cal. Nov. 18, 2013)* (Judge William H. Orrick Jr.); *Apostol v. Citimortgage, Inc., No. C 13-1983, 2013 U.S. Dist. LEXIS 167308, 2013 WL 6140528, at 6 (N.D. Cal. Nov. 21, 2013)* (Judge William H. Orrick Jr.)." (*Zapata v. Wells Fargo Bank, N.A.* (N.D.Cal. Dec. 10, 2013, No. C 13-04288 WHA) 2013 U.S.Dist. Lexis 173187, at p. \*5.)  Federal courts continue to reject the reasoning in *Glaski*.  (*Haddad v. Bank of America, N.A.* (S.D.Cal. Jan. 8, 2014, No. 12cv3010-WQH-JMA) 2014 U.S.Dist. Lexis 2205; *Rivac v. Ndex West LLC* (N.D.Cal. Dec. 17, 2013, No. C 13-1417 PJH) 2013 U.S.Dist. Lexis 177073; *Sepehry-Fard v. Dept. Stores Nat. Bank* (N.D.Cal. Dec. 13, 2013, No. 13-cv-03131-WHO) 2013 U.S.Dist. Lexis 175320.)  We can find no state or federal cases to support the *Glaski* analysis and will follow the federal lead in rejecting this minority holding on the issue presented in this case.

Plaintiff remains undeterred.  She criticizes *Rajamin,* urges us to reject its holding, and insists that *Glaski's* literal interpretation of New York law represents the sounder view.  She accuses the litany of courts that have followed *Rajamin* of employing circular reasoning, choosing to follow *Rajamin* without analysis simply because other courts have done so.  She points us to other New York decisions she believes are "somewhat conflicted" about whether Section 7-2.4 or common law ratification controls.  Her cases are inapposite.

In *Matter of Doman* (Sup.Ct. 2013) 110 A.D.3d 1073 [973 N.Y.S.2d 782] (*Doman*), a beneficiary of a trust, with standing to object, complained that the trustee had made annual annuity payments in violation of its terms.  He did not attempt to ratify the payments and the court did not consider whether trust beneficiaries can ratify an ultra vires act.  (*Doman*, at pp. 783-784.)  Thus the court's ruling that the payments were void

14

has no application to a case in which the issue is whether a beneficiary has the right and power to ratify the ultra vires act. That issue simply was not before the court in *Doman.*

Indeed, the critical issue we face, whether an untimely assignment into a securitization trust is void or voidable, was not raised in any of the cases plaintiff cites. In *In re Dana* (Sup.Ct. 1982) 119 Misc.2d 815 [465 N.Y.S.2d 102] a conservator, also with standing, sought to invalidate, not ratify the transaction at issue.  Similarly, successor trustees in *Dye v. Lewis* (Sup.Ct. 1971) 67 Misc.2d 426 [324 N.Y.S.2d 172] with standing to sue on behalf of the trust sought to void the prior trustees' agreement. The defendants adduced evidence that the beneficiaries had ratified the transaction, recognizing that ratification is legally permissible despite Section 7-2.4.  Finally, in *Aurora Loan Services LLC v. Scheller* (Sup.Ct. 2014) 2014 N.Y.Misc. Lexis 2276 [43 Misc.3d 1226(A), 992 N.Y.S.2d 157] again the court did not consider the trust beneficiaries' ability to ratify the purported ultra vires act.  Rather in an unreported trial court order, the trial court, in dicta, opined that an ultra vires loan assignment would be void, but expressly stated that adjudication of that issue "requires further searching examination."  (*Id.* at p. *7.)  In sum, plaintiff relies on cases that do not even address the determinative issue whether beneficiaries can ratify various ultra vires acts.  Thus, they provide no support for her position.

Two post-*Yvanova* California appellate courts, in published opinions, have embraced the emerging consensus that assignments, which allegedly violate PSA's and federal law are voidable rather than void, and as a result, borrowers do not have standing to challenge late transfers or other defects in the securitization process.  The Fourth District's case, *Saterbak, supra*, 245 Cal.App.4th 808, is not precisely on point because it involved a borrower's attempt to cancel an assignment and obtain declaratory relief before the property was foreclosed and *Yvanova* expressly limited its ruling to wrongful foreclosures.  (*Yvanova, supra*, 62 Cal.4th at pp. 934-935.)  Nevertheless, the borrower alleged, as plaintiff alleges here, that the assignment occurred after the closing date for

the trust and the signature on the instrument was forged or robo-signed.  (*Id.* at p. 811.)
The court held the borrower did not have standing to pursue these theories.

The court in *Saterbak* dismissed *Glaski* in a footnote, noting that the case upon
which *Glaski* relied had been overturned and relying on *Rajamin's* rejection of *Glaski's*
interpretation of New York law.  (*Saterbak, supra*, 245 Cal.App.4th at p. 815, fn. 5.)  The
court acknowledged that *Yvanova* recognized a borrower's standing only where the
defect in the assignment rendered the assignment void.  "*Yvanova* expressly offers no
opinion as to whether, under New York law, an untimely assignment to a securitized trust
made after the trust's closing date is void or merely voidable.  [Citation.]  We conclude
such an assignment is merely voidable.  (See *Rajamin v. Deutsche Bank National Trust
Co.* (2d Cir. 2014) 757 F.3d 79, 88-89 (*Rajamin)* ["the weight of New York authority is
contrary to plaintiffs' contention that any failure to comply with the terms of the [pooling
and servicing agreements] rendered defendants' acquisition of plaintiffs' loans and
mortgages void as a matter of trust law'; 'an unauthorized act by the trustee is not void
but merely voidable by the beneficiary']." (*Saterbak,* at p. 815.)

Unlike the attempted preemptive action to cancel an assignment before foreclosure
in *Saterbak,* the Second District's opinion in *Yhudai, supra*, 1 Cal.App.5th 1252, involves
an alleged wrongful foreclosure.  As here, the borrower claimed an assignment of his
note and grant deed to a trust was void under New York law because it occurred after the
trust's closing date, as established by the PSA.  (*Id.* at pp. 1255, 1257.)  Yhudai, like
plaintiff, relied on *Glaski* to support his assertion that the assignment was void.  Like us,
the court chronicled the litany of cases that have rejected the *Glaski* analysis hinged, as it
is, to the discredited trial court ruling in *Escobobo I.*  (*Yhudai,* at p. 1258.)  It then
proceeded to follow their lead with the following apt analysis.

"The rejection of *Erobobo I* is based on sound reasoning.  Under New York law,
unauthorized acts by trustees may generally be approved, or ratified, by the trust
beneficiaries.  [Citations.]  Under *Erobobo I*, however, a stranger to the trust would have

standing to assert that the unauthorized transaction is void, thereby giving 'the stranger . . . the power to interfere with the beneficiaries' right of ratification.' ( *Rajamin, supra,* at p. 89.)  The stranger's right (under *Erobobo I)* to declare a transaction void would thus conflict directly with the beneficiaries' right to ratify the transaction.  This conflict is avoided by rejecting *Erobobo I:*  Because a trust beneficiary under New York law 'retains the authority to ratify a trustee's *ultra vires* act, such as a late transfer[,] . . . the act . . . must not be void; it must merely be voidable.' (*Cocroft, supra,* 796 F.3d at p. 689.)

"Because the decision upon which *Glaski* relied for its understanding of New York law has not only been reversed, but soundly and overwhelmingly rejected, we decline to follow *Glaski* on this point.  (See *Saterbak v. JPMorgan Chase Bank, N.A.* (2016) 245 Cal.App.4th 808, 815, fn. 5 (*Saterbak)* [rejecting *Glaski* because 'the New York case upon which *Glaski* relied has been overturned'].)  Yhudai offers no other authority for his contention.  Based on the authorities cited above, a postclosing assignment of a loan to an investment trust that violates the terms of the trust renders the assignment voidable, not void under New York law." (*Yhudai, supra*, 1 Cal.App.5th at p. 1259, fn. omitted.)  The court also rejected the borrowers' new theory, unsupported by citation to relevant authority, that the assignment was void under federal and California law.  (*Id.* at pp. 1259-1260.)  And, because any new cause of action would be dependent upon the allegation that the assignment was void, the new cause of action would also fail as a matter of law.  (*Id.* at p. 1261.)

In spite of this mountain of authority against her position, plaintiff continues to insist she has standing.  To adopt her position, we would have to reject all of the New York, California, and federal cases cited above and adopt the discredited *Glaski* interpretation of New York law, an interpretation expressly rejected by the appellate courts in New York.  There is nothing in *Yvanova* to compel us to rethink our previous opinion that plaintiff lacks standing to challenge the validity of the assignment because

17

her allegations at best suggest it is voidable.  Perhaps a court in Illinois put it most succinctly:  "We simply do not see how the New York legislature could have intended to allow a debtor in a commercial transaction to invoke the provisions of a trust to which it is a stranger in order to frustrate the collection of the debt."  (*Bank of America National. Assn. v. Bassman FBT, L.L.C.* (App.Ct. 2012) 2012 Il. App. (2d) 110729, at \*38 [981 N.E.2d 1, 13].)

In the face of such overwhelming authority against her, now plaintiff offers a new justification for finding she has standing.  She attempts to distance herself from the PSA and argues the assignment is void because it is a violation of federal law.  Although she concedes that the second amended complaint focuses on the terms of the PSA's, she maintains the pleading is not fatal because the "PSA terms merely echo the federal law on the subject."  She insists the crux of her argument is that a late transfer is not only a violation of the PSA's, which she admits is ultimately irrelevant, but also a violation of federal law.  We agree with defendants the new argument is meritless.

The federal law she identifies pertains to certain tax exemptions for a REMIC, the type of trust in which her mortgage was allegedly placed.  A REMIC "facilitates the issuance of mortgage-backed securities by setting out minimum requirements that entities or taxpayers must meet in order to qualify."  (*Meixner v. Wells Fargo Bank N.A, supra*, 2016 U.S.Dist. Lexis 77440, at p. \*17, fn. 5.)  While plaintiff warns of the catastrophic tax consequences that would follow transfers of mortgages into the trusts after their closing dates, she fails to convince us that the inability of a loan trust to obtain a tax benefit under 26 United States Code sections 860A-860D renders a loan assignment void. We will attempt to unravel her logic.

Plaintiff provides us with a brief, if incomplete, primer on the history and purpose of REMIC's reminding us they were created by the Tax Reform Act of 1986 to provide a "stable, non-moving pool of mortgage loans to generate steady and predictable income for its investors."  (See *R&G Properties, Inc. v. Column Financial, Inc.* (Vt. 2008)

968 A.2d 286.)  Plaintiff explains that for a mortgage to qualify for inclusion in the corpus of a REMIC, 26 United States Code section 860G(a)(ii)(A)(3)(ii) requires the trust to purchase the loan within three months of the startup day of a REMIC (which is always referred to as the 'closing day' in PSA's.)  If the mortgages do not qualify because they are transferred late, they are considered "prohibited transactions" and are heavily taxed.  (26 U.S.C. § 860F(a)(2)(A).)  In plaintiff's view, the failure to transfer the loan within the three months constitutes "a violation of federal law."

Plaintiff, using such ominous terminology as "prohibited transactions" and "violation of federal law," argues that beneficiaries of the trusts could not ratify a trustee's late acceptance of mortgages because it would threaten the viability of the REMIC.  Making the fantastical leap from a prohibited transaction for tax purposes to "prohibited by law," plaintiff insists that because certificate holders have no right or power to ratify a belated assignment that is "independently forbidden" by law the transaction is void.

While plaintiff fails to cite any authority to support her argument, several federal courts have rejected it.  (See, e.g. *Meixner v. Wells Fargo Bank, N.A., supra*, 2016 U.S.Dist. Lexis 77440; *Wagner v. Nat'l Default Servicing Corp.* (D.Nev. June 10, 2015, No. 2:15-cv-506-JCM (VCF)) 2015 U.S.Dist. Lexis 75096.)  The United States District Court for the Northern District of California dismissed the faulty securitization argument this way:  "Moreover, the alleged breach seems to affect only the trust's ability to claim a certain tax status, a matter wholly irrelevant to Plaintiff's claims."  (*Elliot v. Mortgage Elec. Registation Sys.* (N.D.Cal. Apr. 30, 2013, No. 12-cv-4370 YGR) 2013 U.S.Dist. Lexis 61820, at p. *8.)  The United States District Court for the Southern District of New York echoed the same sentiment.  "If a mortgage is transferred to a REMIC following the REMIC's startup date, the REMIC may lose its favorable tax treatment.  Plaintiffs argue that the endorsement to U.S. Bank as trustee for a REMIC trust was invalid because the REMIC's startup date was in 2006, and therefore, Plaintiffs'

note could not be transferred to the REMIC in 2011.  This point is unpersuasive.  While transferring a note to the REMIC might have negative tax consequences for the REMIC investors, Plaintiffs have not argued any reason why such a transfer would be 'meaningless and legally unenforceable.' "  (*Williams v. GMAC Mortg. Inc.,* (S.D.N.Y. June 6, 2014, No. 13 civ. 4315 (JRO)) 2014 U.S.Dist. Lexis 77540, at pp. *13-*14.)

      We will follow the federal guidance.  Like those courts, we do not believe that losing favorable tax treatment renders a transaction void as a matter of law.  Plaintiff has taken liberties with the language used in the tax code and ascribed a meaning far beyond the law of taxation to invalidate transactions by trustees.  Because a transfer of a mortgage may be characterized as a "prohibited transaction" for tax purposes does not mean it is inherently an act in "violation of federal law" as plaintiff maintains.  Moreover, the defendants aptly point out that plaintiff's selective extraction of tax code provisions leaves out the important distinction that not all transfers must be qualified to retain the favorable tax exemptions and thus the late transfer of plaintiff's mortgage may not necessarily jeopardize the tax status of the entire trust.  (26 U.S.C. § 860D(a)(4); *New York State ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A.,* (2d Cir. 2016) 824 F.3d 308, 319.)  Either way, we reject the notion that an untimely transfer to a REMIC automatically voids the transaction.  The tax implications of securitization simply do not render a voidable transaction void.

      Plaintiff also insists that a robo-signed assignment is a void assignment, and a void assignment unravels the entire nonjudicial foreclosure.  Although the robo-signing allegation has been launched in many cases, plaintiff fails to cite any authority in which a court set aside a trustee's sale based on a robo-signed document.  To the contrary, a federal court explained:  "To the extent that an assignment was in fact robo-signed, it would be voidable, not void, at the injured party's option."  (*Pratap v. Wells Fargo Bank, N.A.,* (N.D.Cal. 2014), 63 F.Supp.3d 1101, 1109.)  The bank, not the borrower would be the injured party.  (*Ibid*.)

*Maynard v. Wells Fargo Bank, N.A.* (S.D.N.Y Sept. 11, 2013, No. 12cv1435 AJB (JMA)) 2013 U.S.Dist. Lexis 130800 (*Maynard*) provides an apt example of a case in which the court also held that a robo-signed assignment is voidable.  The Maynards asserted that an assignment was void because Kathleen Everson, the woman who signed it, did not hold the title she claimed on the document.  (*Maynard*, *supra*, 2013 U.S.Dist. Lexis 130800, at pp. *22-*24.)  They supported their allegation by attaching Everson's LinkedIn.com profile and a Fiscal Times Financial Advisor profile, both of which identified her position with Wells Fargo as something other than the position named on the deed of trust she purportedly signed.  (*Id*. at p. *25.)  The Maynards argued that utilization of the fabricated assignment constituted intentional misrepresentation and fraudulent concealment.  (*Id*. at pp. *22-*28.)  The court dismissed all causes of action predicated on the robo-signing allegation.  (*Id*. at pp. *27-*28.)

The court explained:  "Although Plaintiffs make a valiant effort to bolster their robo-signing allegations with Everson's LINKEDIN.com profile, Everson's profile from the Fiscal Times, and the National Mortgage Settlement Agreement, all miss the mark.  Plaintiffs' allegations do not demonstrate that Everson was not authorized in her regular course of duties at Wells Fargo to execute Assignments of Deeds of Trust on behalf of Wells Fargo, nor do Plaintiffs allege that Wells Fargo did not ratify Everson's conduct . . . ."  (*Maynard, supra*, 2013 U.S.Dist Lexis 130800, at pp. *25-*26.)

*Maynard* is consistent with the prevailing view that plaintiff homeowners lack standing to challenge the validity of robo-signatures.  (See, e.g. *Bennett v. Wells Fargo Bank, N.A.* (N.D.Cal. Aug. 9, 2013, No. CV 13-01693-KAW) 2013 U.S.Dist. Lexis 112756, at pp. *17-*18.)  "To the extent that an assignment was in fact robo-signed, it would be voidable, not void."  (*Pratap v. Wells Fargo Bank, supra*, 63 F.Supp.3d 1011, 1109.)

The trial court properly sustained defendants' demurrer to the wrongful foreclosure cause of action.  We uphold the trial court's ruling because plaintiff lacks

standing to challenge the assignment of her loan and deed of trust.  Plaintiff makes the rote assertion that if afforded the opportunity, she would provide more facts to coincide with the emerging jurisprudence.  That promise does not meet her burden of disclosing in her briefing what new facts she can now state to revive her wrongful foreclosure claim. As a result, the trial court did not abuse its discretion by foreclosing additional amendments.[5]

### III

### *Declaratory Relief and Quiet Title*

Plaintiff's remaining two causes of action for declaratory relief and quiet title are fatally deficient on their face.[6]  Since the property has been sold, there remain no prospective claims appropriate for declaratory relief.  (*Babb v. Superior Court* (1971) 3 Cal.3d 841, 848.)  Moreover, the substance of her allegations to secure declaratory relief is merely duplicative of her cause of action for wrongful foreclosure.  (*California Ins. Guarantee Assn. v. Superior Court* (1991) 231 Cal.App.3d 1617, 1623-1624.)

Plaintiff does not argue the merits of her quiet title cause of action.  As defendants contend, it fails as a matter of law because she does not demonstrate paramount title and she has not paid the debt secured.  (*Halajian* v. *Deutsche Bank National Trust Co.* (E.D.Cal. Feb.14, 2013, No. 1:12-cv-00814 AWL GSA), 2013 U.S.Dist. Lexis 20341, at p. *27)

---

[5]  We asked the parties to brief issues involving tender and prejudice.  Because we conclude plaintiff does not have standing to challenge the assignment of her note and mortgage, we need not address these issues.

[6]  Plaintiff argues the viability of a number of phantom causes of action she did not set forth in the second amended complaint, many of which were never alleged in her earlier complaints.  " 'Such amended pleading supplants all prior complaints.  It alone will be considered by the reviewing court.  [Citations.]' "  (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 884.)  Plaintiff has waived any causes of action she failed to allege in her second amended complaint.

Plaintiff offers no new factual allegations to merit an opportunity to further amend her complaint or to demonstrate that the trial court abused its discretion.  She has had three opportunities to state a viable claim against these defendants and has fallen far short of the mark.

### DISPOSITION

The judgment is affirmed.


_____RAYE_____, P. J.


We concur:


_____MAURO_____, J.


_____DUARTE_____, J.