# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

**KELLY GRACE ANCHETA,**

　　　　Plaintiff**,**

　　　vs.

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ET AL.,**

　　　　Defendants**.**

CASE NO.  16-cv-06520-YGR

**ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND**

Re: Dkt. No. 11

Plaintiff Kelly Grace Ancheta ("Ancheta") brings this wrongful foreclosure action against defendants Mortgage Electronic Registration Systems, Inc. ("MERS"); Bank of America, N.A. ("BANA"), and The Bank of New York Mellon fka The Bank of New York, as Trustee for the CWALT, INC., Alternative Loan Trust 2006-0A9, Mortgage Pass-Through Certificates, Series 2006-0A9 ("BNYM").  Ancheta alleges two claims: wrongful foreclosure and violation of the California Unfair Competition Law, Business & Professions Code section 17200.  The action was initially filed on September 20, 2016, in the Superior Court of the State of California, County of San Mateo, and was removed to this Court on November 9, 2016, based upon diversity. Defendants have filed a Motion to Dismiss the complaint under Rule 12(b)(6) for failure to state a claim based upon the statute of limitations and failure to allege a claim sufficiently.  (Dkt. No. 11.)

Having carefully considered the papers submitted[1] and the pleadings in this action, and for the reasons set forth below, the Court **GRANTS** the Motion to Dismiss **WITH LEAVE TO AMEND**.

## I.    SUMMARY OF ALLEGATIONS

Ancheta alleges that on April 14, 2006, she executed an adjustable rate mortgage including a Deed of Trust ("DOT"), relating to a residential property in San Mateo, California.  The DOT

---

[1] Defendants urge the Court not to consider the opposition to the motion as having been filed late.  The docket reveals that a motion to dismiss was filed on November 16, 2016 (Dkt. No. 9) and the identical motion was filed again on November 18, 2016 (Dkt. No. 11).  Ancheta's opposition filed December 2, 2016, was filed timely in relation to the November 18, 2016 filing. N.D. Cal. Civ. L. R. 7-3(a).   Docket No. 9 is administratively terminated as a duplicate filing.

1   identified American Mortgage Express Corporation ("AME") as the lender, defendant MERS as

2   the nominal beneficiary and Chicago Title as the trustee.  The original loan servicer was

3   Countrywide Home Loans Servicing, LP.  Subsequent servicers include Bank of America, N.A.,

4   successor by merger to BAC Home Loans Servicing, LP f/k/a Countrywide Home Loans

5   Servicing, LP. (Dkt. No. 1, Exh. 1 [Complaint] ¶¶ 7, 8.)  Shortly after origination, AME sold the

6   loan was sold to Countrywide Home Loans, Inc. ("Countrywide") but without an accompanying

7   assignment of the DOT.  (*Id.* ¶9.)  Countrywide later sold the loan to CWALT, Inc., and the loan

8   was subsumed within a mortgage-backed securities trust (Alternative Loan Trust 2006·OA9)

9   established by CWALT, Inc.  (*Id.* ¶¶ 10, 11.)  The trust was established under New York law.  (*Id.*

10   ¶ 11.)

11          On September 20, 2011, MERS as "nominee for AME" executed an Assignment of Deed

12   of Trust to assign the beneficial interest in Ancheta's mortgage to the The Bank of New York

13   Mellon f/k/a The Bank of New York, as Trustee for the CWALT, INC., Alternative Loan Trust

14   2006-0A9, Mortgage Pass-Through Certificates, Series 2006-0A9 ("BNYM") (Complaint at Exh.

15   C.)[2]  On October 7, 2011, MERS, as "present beneficiary," executed a Substitution of Trustee in

16   which Recontrust Company, N.A. ("Recontrust") was substituted as the trustee of the DOT

17   securing the Subject Loan. (Compl. ¶ 26, Exh. E.)  That same day, MERS executed a second

18   assignment to BNYM.  (*Id.* ¶ 27, Exh. F.)  Also on October 7, 2011, Recontrust executed a a

19   Notice of Default and Election to-Sell under Deed of Trust ("NOD") which stated Ancheta was

20   $63,702.35 in arrears on the Subject Loan. (*Id.* ¶ 28, Exh. H.)

21          On January 17, 2012, Recontrust recorded a Notice of Trustee's Sale ("NOTS") which

22   stated the total amount of the unpaid balance plus interest of the Subject Loan, plus expenses

23   _____

24   [2] Defendants request judicial notice of the following:
     1. Deed of trust dated April 19, 2006, recorded April 26, 2006;

25   2. Assignment of deed of trust dated October 7, 2011, recorded October 12, 2011;
     3. Notice of Default dated October 7, 2011, recorded October 12, 2011;

26   4. Notice of Trustee's Sale dated January 12, 2012, recorded January 17, 2012;
     5. Trustee's Deed Upon Sale dated February 9, 2012, recorded February 17, 2012

27          The Court **GRANTS** the request for judicial notice and **OVERRULES** Ancheta's objections
     thereto.  The documents are part of the public record and are included as exhibits to Ancheta's

28   complaint as well.  (*See* Compl., Exhs. A, C, H, I and J.)

United States District Court
Northern District of California

related to the publication of the Notice was $630,777.94. (*Id.* ¶ 29, Exh. I.)  On February 17, 2012, Recontrust recorded a Trustee's Deed Upon Sale ("TDUS") that stated defendant BNYM has purchased the Subject Property on February 7, 2012, for $423,000. (*Id.* ¶ 29, Exh. J.)

Ancheta filed her complaint for wrongful foreclosure and violation of Business & Professions Code section 17200 in the state court on September 20, 2016.  Thereafter, on November 9, 2016, defendants removed the action to this Court based upon diversity of citizenship.

**II.   ANALYSIS**

Defendants move to dismiss Ancheta's claims on three grounds: (1) the wrongful foreclosure claim is time-barred; (2) the wrongful foreclosure claim fails as a matter of law for lack of standing to challenge the securitization issues, lack of prejudice from any defects in the foreclosure procedure, and failure to tender the amount of her indebtedness; and (3) the UCL claim fails as a matter of law

**A.   Statute of Limitations**

Defendants move to dismiss on the grounds that Ancheta's claims, brought four years and eight months after the foreclosure sale of the property, are barred by the applicable statute of limitations.  Ancheta contends that "there is no statute of limitations applicable to a wrongful foreclosure action" (Oppo. at 6:4-5), that the statute of limitations is not the three-year statute of limitations under California Code of Civil Procedure section 338 (as defendants contend), and that, even if it were, it should be equitably tolled for her delayed discovery of the facts in support of her claim.  These arguments all fail.

First, Ancheta's argument that no statute of limitations applies to a wrongful foreclosure action is completely without merit and lacks legal authority.[3]  California Code of Civil Procedure section 312 provides that "[c]ivil actions, without exception, can only be commenced within the periods prescribed in this title, after the cause of action shall have accrued, unless where, in special

---

[3] Ancheta does not contest that the four-year statute of limitations applicable to her UCL claim would bar that claim, and simply seeks leave to amend to allege a basis for tolling.  (Oppo. at 12:24-13:2.)

United States District Court
Northern District of California

United States District Court
Northern District of California

1    cases, a different limitation is prescribed by statute."  Cal. Code Civ. Proc. § 312.  Moreover,

2    Ancheta's argument runs counter to the policies underlying statutes of limitation, including

3    protecting parties from defending stale claims where the passage of time causes loss of evidence

4    and presents unfair handicaps.  *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 806, 110 P.3d

5    914, 919–20 (2005).

6          Second, based on the allegations of the complaint, the wrongful foreclosure claim falls

7    within the three-year limitations period set forth in California Code of Civil Procedure section

8    338.  Under California law, "the nature of the right sued upon, not the form of action or the relief

9    demanded, determines the applicability of the statute of limitations."  *Jefferson v. J. E. French*

10   *Co.*, 54 Cal. 2d 717, 718 (1960).  Section 338 provides a three-year statute of limitations for a

11   variety of claims, including: "[a]n action upon a liability created by statute, other than a penalty or

12   forfeiture;" "[a]n action for trespass upon or injury to real property;" "[a]n action for relief on the

13   ground of fraud or mistake;" and "slander of title to real property."  Cal. Code. Civ. Proc. § 338

14   (a), (b), (d), (g).[4]  Ancheta's claim is based upon allegations that the various documents recorded

15   to effectuate the foreclosure sale were recorded fraudulently and contrary to the California non-

16   judicial foreclosure statutes.  (Complaint ¶¶ 33-38.)  Courts examining claims similar to Ancheta's

17   have concluded that the three-year statute of limitations in section 338 applies.  *See, e.g.,*

18   *Engstrom v. Kallins*, 49 Cal. App. 4th 773, 781–83 (1996) (wrongful foreclosure claim based upon

19   defendants' failure to comply with statutory requirements regarding notice covered by section

20   338(a)); *Hatch v. Collins*, 225 Cal. App. 3d 1104, 1110 (1990) (wrongful foreclosure claim based

21   upon alleged fraudulent conspiracy between trustee and beneficiaries covered by section 338(d));

22   *Susilo v. Wells Fargo Bank, N.A.*, 796 F. Supp. 2d 1177, 1195 (C.D. Cal. 2011) (action to set aside

23   wrongful foreclosure covered by section 338(d) whether based on fraud, fraudulent conspiracy, or

24   breach of statutory duty); *Martinez v. JPMorgan Chase Bank, N.A.*, No. C 16-00627 WHA, 2016

25

26   _____

27        [4] A number of other statutes provide the limitations periods for other types of claims under
     California law.  For all claims not otherwise covered by one of the general or specific limitations
28   periods, section 343 sets forth a catch-all limitations period of four years.  Cal. Civ. Proc. Code §
     343.

1    WL 1382906, at *1 (N.D. Cal. Apr. 7, 2016) (wrongful foreclosure, fraud, and quiet title claims all

2    subject to section 338).

3           Third, Ancheta has not alleged a basis for equitable tolling that would make her claim

4    timely.  Ancheta contends her claim is subject to equitable tolling pursuant to the discovery rule.

5    Where a complaint demonstrates on its face that it would be barred without the benefit of the

6    discovery rule, plaintiff must allege facts to show when the facts were discovered and how, as well

7    as the inability to have discovered them earlier in spite of reasonable diligence." *Fox*, 35 Cal. 4th

8    at 808.  "[A] potential plaintiff who suspects that an injury has been wrongfully caused must

9    conduct a reasonable investigation of all potential causes of that injury." *Id.*  "If such an

10   investigation would have disclosed a factual basis for a cause of action, the statute of limitations

11   begins to run on that cause of action when the investigation would have brought such information

12   to light." *Id.* at 808–09.

13          Ancheta alleges she "was unaware that the foreclosure sale of her property was illegal until

14   she retained the services of a forensic mortgage loan auditor and attorney to investigate the chain

15   of title to her loan and advise her of her legal rights." (Complaint ¶ 40).  Ancheta apparently was

16   aware of the foreclosure, and of the underlying indebtedness and default, and all the documents

17   referenced in the allegations were recorded well before the NOD, NOTS, and foreclosure sale

18   occurred.  These events alone would appear to trigger Ancheta's duty to conduct a diligent

19   investigation.  The complaint does not allege any facts about why those events would not have

20   triggered the time period, nor does it allege when she hired the auditor or attorney, or any other

21   due diligence that might support equitable tolling of the statute of limitations.  In her opposition,

22   Ancheta states that she hired a forensic mortgage loan auditor and read his report on July 5, 2016,

23   thereafter hiring an attorney on October 6, 2016.  This argument raises the question as to what she

24   was doing from February 7, 2012, until this audit report in July 5, 2016, and why she could not

25   have discovered the facts she alleges now, over four years after the foreclosure sale.  The

26   argument that Ancheta was aware only of the foreclosure proceedings, not any illegal activities by

27   defendants, simply does not support equitable tolling of the statute of limitations.  The additional

28   facts Ancheta suggests she can allege, in her opposition, do not support equitable tolling either.

1

**B.      Wrongful Foreclosure Claim**

2

Ancheta alleges that the foreclosure was improper for two reasons: (1) her loan was

3

assigned to the trust after its closing date, in violation of the applicable Pooling and Service

4

Agreement, making that assignment void; and (2) the interest MERS and its principal AME

5

formerly held in her loan was extinguished as of May 30, 2006, when AME sold the loan to

6

Countrywide such that any later actions by MERS, such as assignment of the deed of trust to

7

BNYM, or substituting Recontrust as the trustee, were invalid.

8

*1.      Assignment to Trust After Closing Date*

9

On the securitization theory, Ancheta has not alleged facts sufficient to allow her to

10

challenge the foreclosure based upon defects in the securitization of the mortgage loan.  The

11

California Supreme Court has held that a borrower who has suffered a nonjudicial foreclosure may

12

challenge that foreclosure based upon the validity of an assignment only if the assignment is void

13

under applicable law.  *Yvanova v. New Century Mortg. Corp.*, 62 Cal. 4th 919, 924 (2016).  In

14

*Yvanova*, the court was presented with the single question "under what circumstances, if any, may

15

the borrower challenge a nonjudicial foreclosure on the ground that the foreclosing party is not a

16

valid assignee of the original lender?  Put another way, does the borrower have standing to

17

challenge the validity of an assignment to which he was or she was not a party?"  *Id.* at 928.

18

The *Yvanova* court held that a borrower may challenge the validity of the assignment if

19

such assignment is void, but not if it is merely voidable under applicable law.  *Id.* at 923.  "[O]nly

20

the entity holding the beneficial interest under the deed of trust—the original lender, its assignee,

21

or an agent of one of these—may instruct the trustee to commence and complete a nonjudicial

22

foreclosure."  *Id.* at 935.  "If a purported assignment necessary to the chain by which the

23

foreclosing entity claims that power is absolutely void, meaning of no legal force or effect

24

whatsoever, the foreclosing entity has acted without legal authority by pursuing a trustee's sale,

25

and such an unauthorized sale constitutes a wrongful foreclosure."  *Id.* (internal citations omitted).

26

A voidable assignment, on the other hand, is one that the parties thereto may ratify or extinguish at

27

their election, rights that the borrower has no power to assert or to challenge.  *Id.* at 929-30.

28

Here, Ancheta's challenge to the timing of the assignment to the mortgage-based securities

United States District Court
Northern District of California

6

1    trust is subject to New York law.  An assignment to a trust after its closing date has been

2    determined to be voidable, not void, under New York trust law.  *See Mendoza v. JPMorgan Chase*

3    *Bank, N.A.*, 6 Cal. App. 5th 802, 813 (2016), *review filed* (Jan. 24, 2017) ("New York state and

4    federal courts … [hold that] a borrower does not have standing to challenge an assignment that

5    allegedly breaches a term or terms of a PSA because the beneficiaries, not the borrower, have the

6    right to ratify the trustee's unauthorized acts"); *Saterbak v. JPMorgan Chase Bank, N.A.*, 245 Cal.

7    App. 4th 808, 815 (2016), *reh'g denied* (Apr. 11, 2016), *review denied* (July 13, 2016) (an

8    untimely assignment, to a securitized trust made, in violation of trust terms for a closing date, is

9    voidable, not void, under governing New York state law); *Yhudai v. IMPAC Funding Corp.*, 1

10   Cal.App.5th 1252, 1259 (2016) *review denied* (Oct. 26, 2016) ("[A] postclosing assignment of a

11   loan to an investment trust that violates the terms of the trust renders the assignment voidable, not

12   void, under New York law," after recent changes in applicable law).[5]  Thus, Ancheta has no

13   standing to challenge the validity of the assignment after the trust closing date.

                      2.      *MERS' Lack of Authority to Execute Assignments or Substitutions*

15          As to the theory that MERS lacked authority to execute assignments and substitutions,

16   Ancheta alleges that, shortly after origination, her original lender, AME sold her mortgage loan to

17   Countrywide Home Loans, Inc. in a table-lending transaction. (Complaint ¶ 9.)  She alleges that

18   Countrywide sold the loan to CWALT, Inc., which ended MERS' agency relationship since

19   CWALT is not a MERS member and the terms of the PSA only permitted the depositor (CWALT)

20   to make the final assignment and transfer of the loans to the trust.  Ancheta contends that any

21   interest AME and MERS had in her loan was extinguished as of May 30, 2006, according to the

_____

23          [5] While the earlier California decision in *Glaski v. Bank of America, N.A.*, 218 Cal.App.4th
24   1079 (2013), permitted a borrower to challenge the timing of the assignment of a note to a trust as
     being void, subsequent decisions have noted that applicable New York law has changed since
25   *Glaski*.  *Yhudai*, 1 Cal.App.5th at 1259 ("[b]ecause the decision upon which *Glaski* relied for its
     understanding of New York law has not only been reversed, but soundly and overwhelmingly
26   rejected, we decline to follow *Glaski* on this point," citing *Saterbak v. JPMorgan Chase Bank,*
     *N.A.* (2016) 245 Cal.App.4th 808, 815, fn. 5).  The California Supreme Court's decision in
27   *Yvanova* was a narrow one, and "expressed no opinion as to *Glaski*'s correctness" on the question
     of whether New York law made an assignment after the trust closing date void or merely voidable.
28   *Yvanova*, 62 Cal. 4th 919 at 940-41.

United States District Court
Northern District of California

terms of the Pooling and Servicing Agreement (PSA) governing the trust.  (Complaint ¶¶ 11, 13, 14.)[6]  Thus, according to Ancheta, it follows that MERS had no interest it could assign to BNYM, no authority to make the assignment of the DOT to the BNYM trust, and no authority to execute the SOT to substitute Recontrust as trustee on the DOT.  Consequently, she alleges, Recontrust had no authority to record the NOD and none of the defendants had authority to direct Recontrust to issue the NOS or perform the foreclosure sale of the property.  (Complaint ¶ 35.)  In sum, she contends that the SOT, NOD, NOTS, and foreclosure sale were all fraudulent and void.

While Ancheta alleges that MERS lost its authority to make assignments during the course of the securitization process because of the sale of the note from Countrywide to CWALT, she does not offer more than conclusory allegations that the assignments by MERS were void rather than merely voidable.[7]  The Court must take the facts alleged as true for purposes of a motion to dismiss, but does not "accept *legal conclusions* in the complaint as true, even if 'cast in the form

---

[6]  The original DOT identifies MERS as "nominee for Lender *and Lender's successors and assigns*.  MERS is the beneficiary under this Security Instrument." (Complaint Exh. A; RJN Exh. 1 (emphasis supplied).)  The assignment of deed of trust recorded September 30, 2011, identifies MERS as nominee for American Mortgage Express Corp., the original lender, and purports to assign the deed of trust to BNYM trust.  (Complaint Exh. C.)  A substitution of trustee, signed by MERS on October 7, 2011 and recorded on October 12, 2011, purports to substitute Recontrust for the original trustee, Chicago Title, stating that MERS is the present beneficiary under the deed of trust.  (Complaint, Exh. E.)  On those same dates, an additional (and seemingly redundant) assignment of deed of trust is signed and recorded by MERS, stating that all beneficial interest under the deed of trust is transferred to the BNYM trust.  (Complaint Exh. F, RJN Exh. 2.)

[7]  The basis for Ancheta's contention that MERS had no authority to make assignments apparently stems, in part, from the mistaken notion that the note and the deed of trust are required to be transferred together in order to be valid.  (*See* Complaint ¶ 9 ["[t]he sale of Plaintiff's mortgage loan to Countrywide, for full loan value, constituted the first sale of the mortgage loan but without the contemporaneous endorsement of the underlying Note to Countrywide in violation of governing trust documents"]).  No requirement exists in California's non-judicial foreclosure scheme that a party hold the beneficial interest in the note as well as the deed of trust in order to commence foreclosure proceedings, or that they be transferred together.  *Orcilla v. Big Sur, Inc.*, 244 Cal. App. 4th 982, 1004 (2016), *reh'g denied* (Mar. 11, 2016), *as modified* (Mar. 11, 2016); *see also Powell v. Wells Fargo Home Mortg.*, No. 14-CV-04248-MEJ, 2017 WL 840346, at *8 (N.D. Cal. Mar. 3, 2017) (contention that defendant lacked authority to make assignments because the note and deed of trust were split during the securitization process is not a viable theory of recovery under California law).  To the extent Ancheta is asserting that simultaneous transfer is required by the trust PSA, this would raise issues about whether transfers made outside those terms are void or merely voidable under the law applicable to the PSA.

of factual allegations.'" *Lacano Investments, LLC v. Balash*, 765 F.3d 1068, 1071 (9th Cir. 2014) (emphasis in original); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). Ancheta's allegations are insufficient to establish that the assignment of the deed of trust and substitution of trustee that led to Ancheta's foreclosure were void rather than merely voidable. This is particularly so in light of the weight of authorities holding that actions inconsistent with a trust PSA are merely voidable.

To the extent that Ancheta's objection centers on the terms of the PSA for the trust, failure to comply with the terms of a PSA renders defendants' acquisition of Ancheta's loan merely voidable (by the trust beneficiary) rather than void. *Mendoza*, 6 Cal. App. 5th at 813 (citing numerous cases for the proposition that an act in violation of a trust PSA is voidable—not void— under New York law and a borrower has no standing to challenge such violations); *Saterbak,* 45 Cal. App. 4th at 815 (same); *see also Gomes v. Countrywide Home Loans, Inc.*, 192 Cal.App.4th 1149, 1156 (2011) ("California's nonjudicial foreclosure law does not provide for the filing of a lawsuit to determine whether MERS has been authorized by the holder of the Note to initiate a foreclosure"). Ancheta has no standing to complain about violation of the terms of the trust's PSA unless such violations would render MERS's assignments void.

Defendants' arguments regarding failure to show prejudice and lack of tender both depend upon whether the challenged assignments are void or voidable. If the assignments are void, plaintiff need not allege tender of the indebtedness or prejudice arising from the allegedly invalid assignments. *See Sciarratta v. U.S. Bank National Assn.*, 247 Cal.App.4th 552, 555, 568 (2016) (relying on *Yvanova*, void assignment would be proximate cause of injury and therefore result in prejudice to plaintiff, and if the foreclosure is void, tender of the debt is not required to state a claim.); *but see Kalnoki v. First Am. Tr. Servicing Sols., LLC*, 8 Cal. App. 5th 23 (2017) (where assignment substituted one creditor for another, without affecting obligations on the note, the fact of borrowers' default, the likelihood of foreclosure, or their ability to make payments, borrowers could not show prejudice arising from assignment); *see also Glaski*, 218 Cal.App.4th at 1100 ("Tender is not required where the foreclosure sale is void, rather than voidable, such as when a

United States District Court
Northern District of California

plaintiff proves that the entity lacked the authority to foreclose on the property.")  Because the allegations do not sufficiently state the basis for the claim that the assignments were void, they are likewise insufficient to establish whether Ancheta was required to plead tender and prejudice.

### C.   UCL Claim

For the same reasons that the wrongful foreclosure claim fails, the UCL claim likewise fails.  The claim is time-barred and the facts alleged are not sufficient to state a basis for equitable tolling.  Further, the claim is derivative of the wrongful foreclosure claim.

## IV.   CONCLUSION

Accordingly, the Motion to Dismiss is **GRANTED**.  Ancheta is given leave to amend to allege, if possible, facts to support a basis for: (1) equitable tolling of the statute of limitations; (2) a wrongful foreclosure claim based upon an underpinning to the foreclosure proceedings that is legally void, not merely voidable.

Ancheta shall file her complaint no later than **May 1, 2017**.  Defendants shall respond within **21 days** thereafter.

This terminates Docket No. 11.

**IT IS SO ORDERED.**

Dated: March 29, 2017

_____

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**